Good morning. Good morning. May it please the Court, I am Hannah McKenday and I represent the petitioner Paul De La Cruz Hernandez. If you don't mind, I'd like to reserve five minutes for rebuttal. The issues of the BIA's error in assessing Mr. Hernandez's credible and well-founded fear of persecution, religious and political persecution, are properly before this Court. The briefing identifies the appealable order, which was dated December 5, 2019. That order denied Mr. Hernandez's motion for reconsideration of the dismissal of his appeal seeking relief, seeking asylum, withholding of removal and relief under the Convention Against Torture. That order expressly agreed with and summarily affirmed the decision below. It did not conduct an independent analysis of the issues in the proceedings below and so this Court has made clear in Cui Rongma, I'll spell that because I'm not sure I pronounced it right, C-U-I-R-O-N-G-M-A. And we hear that where the BIA's denial relies on the underlying decisions, this Court also looks to those underlying decisions. Well, but I mean the BIA denied this motion for reconsideration and said that the petitioner, the respondent at the time, petitioner now, does not identify specific error of factor law in the previous Board decision and so why isn't the issue here limited to that, whether in moving for reconsideration your client provided specific reasons? Well, Your Honor, we would argue that the statement that Mr. Hernandez made representing himself in a country foreign to him, that the underlying decision, there were errors in the underlying decision related to the Convention Against Torture and the other statutory citations is sufficient under this case law and under this circuit's law for a pro se litigant or applicant seeking relief. I mean is that, even giving him some leeway as a pro se litigant at the time, is that really specific enough? I mean he has to put the BIA on notice of what he thinks was wrong and just saying generically that it was erroneous doesn't really do that. Well, I believe in Cui Rongma, in that case as well, the petitioner appealed just generally the immigration judge's decisions citing the statutes but did not specify any legal basis, any other legal basis, specific legal basis or any factual errors in that judge's decision and this court found that that was sufficient to preserve issues on appeal. But here we would have to say, counsel, that it is sufficient to have a petitioner, in this case, say an error occurred when I was wrongly denied protection. That's the extent of it. So you're saying that that would be sufficient? Yes, Your Honor. Mr. Hernandez identified to the and all that needs to be done is to put the BIA on notice of the potential issues. Well I don't know that it even does that, right? I mean I think it puts them on notice that he disagrees with the decision but you know part of the motion for reconsideration just generally is that you identify a little with some specificity of what you think was wrong either factually or I respectfully disagree. Mr. Hernandez identified the three forms of relief that he was seeking in the proceedings below for asylum withholding of removal and release against the other convention against torture. And then if you look at what he had articulated in those in the hearing, he identified the past persecutions, he identified his fear of future harm and that testimony was never disputed and in fact the immigration judge did not make an adverse credibility finding. If the BIA had considered that even just the transcript hearing alone, not including the record that was submitted, they would have seen that there were errors that could have been corrected. Let's assume that there's a disagreement on that but let's assume that you, would you argue the competency issue, is that possibly the only thing you have left to argue if those other issues are waived? Of course we disagree, I respect that. So yes, assuming that the relief that the petitioner originally sought is waived. We would have not waived the argument that Mr. Hernandez was not competent or at least deserved a competency assessment in the proceedings below and that obligation to assess Mr. Hernandez's competency extended to the BIA's review as well. But how would they know that? How would they know that that was an issue in the first place? Well, it came out in the hearing itself. Mr. Hernandez identified that he took prescription medication for depression and anxiety. Submitted to the immigration judge was also his records, his medical treatment records while he was detained. One of those first dates he was assessed, there is a notation identifying a history of mental health medications. This was not raised to the BIA, right? That's really the issue. Well, it's, but it was within the record that the BIA had available to it in considering whether to adopt the immigration judge's. Who are you asking for? In other words, it sounds like what you're saying is if there's in DISHA and the IJ proceedings of a mental incompetency, that the BIA has an authority of petitioners not raising it and then address that? Yes. Okay, so where's the source of that duty? I think that that is discussed in, is it Mejia? It's discussed in the BIA's own case law matter of MEM and it's also discussed within Franco Gonzalez, which was a district court case within the Ninth Circuit, where it discusses the continuing obligation of the department. I don't want that to stop you mid-plot, but those cases address the IJ's obligation. So you've got the IJ applicant is in front of them. They can see with their own eyes that there's a problem. Those cases stand for the proposition that there ought to be a more searching inquiry on the point of competency. But I don't see in any of those cases that you just cited the point that Judge Bress is just making that it's the obligation of the BIA in reviewing to look behind the IJ's decision and say you should have seen this and you should have done it, especially when that issue has not been refined, articulated, and spelled out in the application of the BIA. Calderon-Rodriguez is a case where this court remanded to the BIA because although at the time of the determination decision for relief, there was apparently no reason to identify the petitioner's mental abilities at that time, there was new evidence. And so this court remanded and asked for a further determination, and then the BIA sent it back down to the immigration judge to then make a determination. So I would say Calderon-Rodriguez is on point here. And just one point. You cited a couple of things. I have reviewed the record, but I didn't remember reviewing the citation, and you indicated that there was a history of mental health concerns. Could you cite what portion of the record that is in? The administrative record? Yes. Yes. And not necessarily now, but at some point, that would be helpful to me. I don't remember that. Yes. The record at 254. And what will we find at 254? It says Mr. Hernandez's medical treatment records while he's detained, and one of the first handwritten notations by a physician treating him saying that there's a history of, quote, mental health medications and diagnosis of anxiety and stress. Okay. I need to say it's for us as opposed to the BIA. Well, it's for us to say that that was enough so that the BIA could have looked behind the IJ's decision and done the more searching inquiry of the competency issue. We would argue, yes, that the documentary record that was before available to the BIA and Mr. Hernandez's testimony that he does suffer from of appealing the immigration judge's decision to the BIA, he also identifies his prescription Ritalin at the time. So it was in one of the top documents that the BIA should have reviewed and potentially triggered their assessment of whether Mr. Hernandez was competent. Do you want to save your remaining time for a little? Yes. Thank you. Thank you. Okay. Let's hear from the Attorney General. Good morning, Your Honors. May it please the Court. My name is Jessica Strokas, and I represent the United States Attorney General in this case. This Court should deny in part and dismiss in part the petition for review for the reasons already identified by the Petitioner's Counsel and by the Honorable Judges. First, the Petitioner has waived any challenge to the that decision. It does not even acknowledge that that decision exists. There's no mention of reconsideration. There's no mention of reconsider. There's no mention of the agency's reasons for denying reconsideration. Just looking at the opening brief, it is completely barren of any mention of that decision. But what if it, we know it exists, what if it had mentioned it and it had said, this is a petition for review from the denial of reconsideration, and that order on reconsideration essentially loops back to the original denial, therefore, we're presented with these issues? I mean, would that solve the waiver problem? Your Honor, I don't believe it would, because we would be assessing the agency's denial of reconsideration in this case, and it's distinct from the reasons for denying the merits appeal. The denial of reconsideration said you didn't raise any error of factor law. We, the Board, are here to assess any error of factor law that you have raised to us. You've not raised one, and so we're denying your motion to reconsider. The motion to, the Board's denial does not reaffirm the prior decision. It does not get into the prior merits decision whatsoever. It simply states that it existed. Your point, I think, was well, this petitioner was pro se at the time, and, you know, he put them on notice sufficiently through his motion for reconsideration. How do you address that? Your Honor, I address that by saying that even given the leniency that the Board and this Court accords to pro se briefs, there still has to be some reason given. What the petitioner's counsel is asking for in this case is for the Board to step into the role of advocate to go behind and say, okay, well, stating that an error is sufficient. Okay, what one error are we looking for that they could have possibly raised in the underlying merits decision either by the Board or, I believe, in the response, the responding answering brief in this case, the Governor pointed out that the arguments in the opening brief aren't even responsive to the Board's merits decision. It's responsive to the immigration judge's decision. So what error is the Board looking for? Do they need to step into the role of advocate? Do they need to be, as I believe the Seventh Circuit once said, paid looking for troubles hidden in briefs? What is the expectation here? And this Court's precedent does say that there is leniency accorded to pro se briefs, pro se filings, but that leniency, there still needs to be something given. And in this case, there was nothing given. There was simply the indication that an error occurred. And then after we move to the competency issue, this does come up, and I've seen this in other cases as well, where there's a possible issue of competency at the IJ level. It's then not presented to the BIA, typically because the petitioner doesn't have counsel. It then comes here and there were, in this case, letters filed pro se by the petitioner claiming that he had, you know, competency limitations. And how do you think the exhaustion rule should work in this situation in terms of a petitioner who doesn't re-exist with the BIA? Your Honor, the INA is very clear. INA section 242d.1 states that it is the obligation of a petitioner to exhaust their administrative remedies. That did not happen here with respect to competency. And I would point out... I guess if I could add to, or maybe further address the question that Judge Brass is asking us, how would an incompetent person do that at that level? How would, I mean, just place yourself in that position. How would that incompetent person do that? Your Honor, I understand your question, but I would point you to what actually happened in this case. We have an individual who prepared and filed their own asylum application, found their own evidence and submitted it to the immigration judge, answered questions, presented their case coherently and cohesively with appropriate behavior and affect. There were no indicia whatsoever before the immigration judge of incompetency. This individual was to understand the nature and object of his proceedings. While perhaps he doesn't speak English or understand the intricacies of asylum law, that's unfortunately frequent in immigration proceedings, quite frankly. If he now, if it's unexhausted in the BIA, but his position is, I did have mental competency issues in front of the IJ, can he go and file a motion to reopen? Absolutely, and that is the process that Congress has accorded to an individual such as this petitioner, where there were potential indicia that arose after the conclusion of all of his proceedings. In the opening brief, it's pointed out that there were, that he had some anxiety and depression, which there was never a clinical diagnosis of depression. It's not reflected in the record anywhere. In fact, there's one mention of depression in the context of the petitioner's testimony, where he said he fell into a depression after his grandfather had died and started using illicit substances as a result. That's the only mention of depression, and so I would state that the opening brief misrepresents what the diagnosis was. In the medical treatment note in the record, it states anxiety and stress, and he also stated that he had a history of taking Ritalin, which is a drug prescribed for ADHD symptoms. But even if a diagnosis of anxiety could potentially somehow trigger some idea of a mental health issue, even the board of MIM says a diagnosis isn't enough. We're looking at does the petitioner understand the nature and object of proceedings, and there was nothing to show that there was any kind of misunderstanding about the nature and object of proceedings. Even if there were, I mean, I think your position is even if it were actually plain on the face of the IJ record that he was incompetent, if he did not raise that in front of the BIA, your position is we have jurisdiction regardless of what the IJ proceedings look like. Yes, Your Honor, that because it was not raised, his process to get that back before the agency, which is the fact finder in this case. This court is a court of review and not first view, and what's being asked here is for it to be a court of first view and not a review. He goes back to the process to go back. If he goes back in terms of what evidence he could put on, is there a time limit? In other words, is he limited to what his state of mental health was at the time of the IJ proceedings or are things that happened to him later or that he's experienced later, can that be included as well? Hypothetically, Your Honor, what the board is looking at for a matter of an inquiry is whether the petitioner, when he is before the agency, understands the nature and object of his immigration proceedings. So if he's challenging his competency before the immigration judge in the past, it's up to the board to say, is there enough evidence now that came up after his proceedings that could potentially show that he was incompetent before? Well, because it sounds like counsel, the petition might have decompensated given the information. That's the information that the IJ would consider, correct? Correct. Well, the board would consider it first as a motion to reopen and remand for the immigration judge to reassess his competency. But it would be a determination that the board would have to make that is there sufficient evidence here showing that he was incompetent at the time of his prior removal proceeding? Because that's really what he's saying here, that he did not understand the nature and object of his proceedings and should have been accorded some kind of safeguards during those proceedings. His competency at this current time could go to potentially in a motion to reopen, whether the board should consider that he deserves safeguards in his motion to reopen before the board, if he should be given additional agency there. But the question that I believe he's trying to raise here with regard to competency is, was he competent when the immigration judge was assessing his claims for relief and protection from removal? And until, I think it was in May of 2020, there was no evidence at all. And now we have the extra record evidence of events that occurred after even the board's denial of his motion to reconsider. That, again, would be the appropriate venue for this, the process that Congress accorded to the petitioner, is in a motion to reopen. It's not in challenging the motion to reconsider, which, again, he did not challenge. I was like, what if there were extensive proceedings before the IJ on mental competence, and there were serious issues, and they would work through, and the IJ said, okay, this person's competent. And then it goes to the BIA, and the petitioner doesn't raise it. Does the government have any obligation under any of these either cases or BIA precedents to alert the board to this issue? I'm not talking about the board separately identifying it itself, but does a government council have obligations there? Yes, both under matter of MAM and under the implementation plan of Franco Gonzalez. So, under matter of MAM, there's an ongoing obligation for the Department of Homeland Security to file any medical records that could indicate incompetence. That's with the IJ, though, right? Is that with the BIA? Yes, I believe so. It is a continuing obligation before the board because competency is a fluid inquiry. It's not static. So, while an individual may be incompetent in one moment, they may be competent in the next. It's essentially what matter of MAM, one of the holdings in matter of MAM. But did the government do that? Did they file anything like that in front of the BIA or they just took a position it wasn't required? There was nothing filed before the board by the Department of Homeland Security. However, the government's position would be that there wasn't anything that should have been filed, that the only medical evidence that could have possibly been filed that's part of this extra record evidence that this court generally is prohibited from considering on a petition for review such as this that was filed by the petitioner back in 2020. The only evidence within that packet that was during the time period that there were any proceedings before the board, just evidence, continued anxiety, frustration about his court case, and some sleeping issues. There were no, there was nothing to indicate that this individual could have had any kind of serious mental health problem in the ways contemplated by matter of MAM or by the Franco-Gonzalez Implementation Plan. The Franco-Gonzalez Implementation Plan on its part applies to proceedings before the agency, proceedings before an immigration judge or where the DHS is representing the government's interest. But that plan requires requires an actual diagnosis by a qualified mental health provider or that an immigration judge finds bona fide doubt about the detainee's competence to represent himself, neither of which occurred before the conclusion of all of the agency proceedings in this case. But if there were a violation of Franco-Gonzalez by the government in terms of not filing some information with the BIA that should have been filed in a petition, it doesn't raise that with the BIA and comes here and says there was such a violation. Is there still an exhaustion problem? Yes, Your Honor, because the petitioner is required by the Immigration Nationality Act, Section 242, D1, to exhaust all of his administrative remedies. And so again, the proper course there, that the process that Congress has afforded is in a motion to reopen. So if there are no further questions, I'll just sum up that this court should deny a petition for review where the only agency decision that was petitioned from timely has been waived in the opening brief and should dismiss the petition for review where the underlying merits decisions were not timely petitioned from. And therefore, this court knocks jurisdiction under stone. And the competency issue should also be found to be unexhausted by this court. Thank you. Thank you, Ms. Strokas. We'll now hear a rebuttal from Ms. McInday. Thank you, Your Honors. I want to make one point of clarification earlier. I pointed to the case, I believe it was Mejia, on this exhaustion point, and actually it should have been Zeng, where the court found administrative exhaustion when the petitioner's brief to the BIA merely stated he was seeking reversal of the IJ's denial of relief. And I do just want to underscore one last point, which opposing counsel alluded to in those earlier filings by Mr. Hernandez to this from the time that he was before the immigration judge. And although the record during his hearing, he was mentioning his history of depression, anxiety, and prescribed medication, but there had been no recent evaluation of how he was feeling. So there is a real question as to what his competency was at that time. If there are no further questions, we'll rest on the briefs. Okay, it appears there are not. I want to thank both counsel for the briefing arguments this morning. Ms. McInday, you are appointed pro bono to represent Mr. de la Cruz in the court. Thank you for your service. Thank you. This matter is submitted.
judges: BRESS, MENDOZA, Ericksen